1  **GREENBERG TRAURIG LLP**
Mark G. Tratos (Bar No. 1086)
2  F. Christopher Austin (Bar No. 6559)
Ronald D. Green, Jr. (Bar No. 7360)
3  3773 Howard Hughes Parkway, Ste. 500 N
Las Vegas, Nevada 89109
4  Tel:  (702) 792-3773
Fax:  (702) 792-9002
5
**KRONENBERGER HANLEY, LLP**
6  Karl S. Kronenberger (CA Bar No. 226112) (*Pro Hac Vice*)
Terri R. Hanley (CA Bar No. 199811) (*Pro Hac Vice*)
7  220 Montgomery Street, Suite 1920
San Francisco, CA 94104
8  Telephone:  (415) 955-1155
Facsimile:  (415) 955-1158
9
Attorneys for Plaintiff
10

11                      **UNITED STATES DISTRICT COURT**
12                           **DISTRICT OF NEVADA**
13

14

15  **ST. MATTHEW'S UNIVERSITY**        Case No. CV-S-05-0848-BES
    **(CAYMAN) LTD., a Cayman Islands**
16  **company,**
                                        **NOTICE OF RELATED ACTION**
17            Plaintiff,                **FILED BY DEFENDANT DAVID L.**
                                        **FREDRICK IN UNITED STATES**
18        vs.                           **DISTRICT COURT, DISTRICT OF**
                                        **MAINE**
19  **SABA UNIVERSITY SCHOOL OF**       **(CASE NO. 06-CV-00052-DBH)**
    **MEDICINE FOUNDATION, a**
20  **Netherland-Antilles company, et al,**

21            Defendants.

22

23

24

25

26

27

28

                                              **NOTICE OF RELATED ACTION**

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.Kronenbergerlaw.com

Plaintiff St. Matthew's University (Cayman) Ltd. ("ST. MATTHEW'S") submits this notice of a related action, filed but undisclosed to this Court, by Defendant David L. Fredrick ("FREDRICK") in the United States District Court, District of Maine, Case No. 06-CV-00052-DBH (the "Maine Action"), filed *after* his appearance and motion practice before this Court.  Defendant FREDRICK has filed and served the following documents:

1. FREDRICK's "Complaint for Declaratory Judgment," filed on March 9, 2006, attached hereto as Exhibit A, which does not disclose the existence of the present action before this Court; and

2. FREDRICK's "Amended Complaint for Declaratory Judgment," filed one day later on March 10, 2006, attached hereto as Exhibit B.

Notably, the complaints filed in the Maine Action are for declaratory relief as to the exact allegations made in Plaintiff's First Amended Complaint ("FAC"), now before this Court in Nevada.  At the time Defendant FREDRICK filed the Maine Action: a) he had been served with the FAC in the present action; b) he had appeared before this Court on motions to challenge personal jurisdiction and venue, and on motions under Fed. R. Civ. Proc. 12(b)(6) (motions dated February 14, 2006); and c) he was engaged in active settlement negotiations with Plaintiff regarding this action.

Plaintiff will be filing motions to dismiss and for sanctions under Fed. R. Civ. Proc. 11 in both actions, as the Maine filings were without legal merit and for the purpose of causing Plaintiff undue burden and expense, and on the grounds Defendant's failure to disclose the Maine Action to this Court was intentional and for the purpose of obstructing justice and hiding sanctionable conduct pending the Court's determination on FREDRICK's outstanding motions.

/ / /

NOTICE OF RELATED ACTION

1  Respectfully Submitted,

2

3  DATED: March 28, 2006.        **KRONENBERGER HANLEY, LLP**

4

5                                By: _____

6                                Karl S. Kronenberger
                                 Terri R. Hanley
7                                Attorneys for Plaintiff
                                 ST. MATTHEW'S UNIVERSITY (CAYMAN) LTD.

8  DATED: March 28, 2006.        **GREENBERG TRAURIG, LLP**

9

10

11                               By: _____

12                               Mark G. Tratos
                                 F. Christopher Austin
13                               Ronald D. Green, Jr.
                                 Designated Local Counsel for Plaintiff
                                 ST. MATTHEW'S UNIVERSITY (CAYMAN) LTD.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

2                                **NOTICE OF RELATED ACTION**

1        **PROOF OF SERVICE**

2        I am a resident of the state of California, over the age of eighteen years and not a
party to this action.   My business address is 220 Montgomery Street, Suite 1920, San
3    Francisco, California, 94104.

4        On March 28, 2006, I served the following document(s):

5    **1. NOTICE OF RELATED ACTION FILED BY DAVID L. FREDRICK IN UNITED
STATES DISTRICT COURT, DISTRICT OF MAINE (CASE NO. 06-CV-00052-DBH)**

6

7    on the parties listed below as follows:

        **NATHAN REINMILLER, ESQ**
8        Alverson Taylor Mortensen & Sanders
        7401 West Charleston Blvd
9        Las Vegas, NV 89117
        Fax:  (702) 385-7000
10       Counsel for Defendants FREDRICK,
        HOUGH, AAIMG

11

12   ☐    BY FACSIMILE MACHINE (FAX), by personally transmitting a true copy
        thereof via an electronic facsimile machine to the fax number listed herein.

13   ☒    BY FIRST CLASS MAIL, by placing a true copy thereof in a sealed
        envelope, with postage thereon fully prepaid, for collection and mailing, in
14       San Francisco, California, following ordinary business practices, which is
        deposited with the US Postal Service the same day as it is placed for
15       processing.

16   ☐    BY PERSONAL SERVICE, by personally delivering a true copy thereof to
        the addresse(s) listed herein at the location listed herein.
17

        ☐    BY OVERNIGHT DELIVERY containing a true copy thereof to the
18       addresse(s) listed herein at the location listed herein.

19   ☐    BY EMAIL to the addresses listed above.

20

21   ☐    (State) I declare under penalty of perjury under the laws of the State of
        California that the foregoing is true and correct.

22   ☒    (Federal) I declare that I am employed in the office of a member of the bar
        of this court at whose direction the service was made.
23

24

25
                                        Jonathan S. Tam
26

27

28

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

                            1                    PROOF OF SERVICE

**EXHIBIT A**
Complaint for Declaratory Judgment

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CIVIL ACTION NO.:   06-CV-00052-DBH

|  |  |
|---|---|
| DAVID L. FREDRICK,<br>Plaintiff, | )<br>)<br>)<br>) |
| vs. | )<br>) |
| ST. MATTHEW'S UNIVERSITY<br>(CAYMAN LTD.),<br>Defendant. | )<br>)<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

### PARTIES

1.    Plaintiff David L. Fredrick ("Fredrick") is a citizen of the State of Florida and the President of SABA University School of Medicine, a Netherland-Antillies Company ("SABA"). SABA offers a medical education to students from the United States and many European and other foreign countries.

2.    Defendant St. Matthew's University (Cayman) Ltd. ("SMU") is a Cayman Islands, British West Indies foreign company which also offers a medical education to students from the United States and other foreign countries.

### JURISDICTION AND VENUE

3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. 1332(a) because it is a suit between a citizen of Florida and a subject of a foreign country and the amount in controversy exceeds $75,000.

4.      A significant part of SMU's curriculum is offered in Maine in conjunction with St. Joseph's College ("St. Joseph's") in Standish, Maine, pursuant to an agreement between SMU and St. Joseph's.

5.      SMU students attend courses at facilities operated by SMU in Windham, Maine as part of the curriculum for matriculation at SMU.

6.      This court therefore has personal jurisdiction over SMU as a result of its regularly conducting business in the State of Maine and this action is properly venued in this Court pursuant to 28 U.S.C. 1391(a).

## FACTS

7.      Fredrick repeats and realleges paragraphs 1 through 6 of the Complaint as if fully set forth herein.

8.      Through its counsel SMU has claimed that Fredrick is responsible for statements published by the Association of American International Medical Graduates (AAIMG) and which allegedly disparage SMU.  SMU's counsel has claimed that Fredrick has tortiously interfered with SMU's efforts to obtain accreditation by various entities and with its contractual and prospective contractual relationships with its students and that Fredrick is liable to it for tens of millions of dollars of lost revenue and other damages to SMU.  Attachment A is one such communication from SMU's counsel describing SMU's claims regarding Fredrick and others.

9.      Fredrick denies all the claims of SMU's counsel including the claims that he has disparaged SMU and that he has tortiously interfered with SMU's efforts to obtain accreditation and its contractual and prospective contractual relationships.

-2-

10. SMU's claims concerning Fredrick's alleged libelous activities are designed to disparage Fredrick and Fredrick risks substantial damage to his reputation and professional standing as a result of those claims.

## COUNT I
### (Declaratory Relief)

11. Fredrick repeats and realleges paragraphs 1 through 10 of the Complaint as if fully set forth herein.

13. Fredrick seeks a declaratory judgment under 28 U.S.C. §§ 2201-2202.

14. There exists an actual controversy between the parties resulting from the allegations improperly made by SMU.

15. Fredrick has legal standing to pursue this declaratory judgment regarding his defenses to SMU's claims.

16. After a trial in this matter, Fredrick will establish entitlement to the declaratory relief set forth below.

WHEREFORE, Plaintiff David L. Fredrick requests that this Court enter an order declaring that:

1) Fredrick has not defamed St. Matthew's University;

2) Fredrick has not engaged in unfair competition with St. Matthew's University by any false or misleading statements;

3) Fredrick has not interfered with St. Matthew's University contractual relationships or with its prospective contractual relationships with students; and

4) Fredrick has not interfered with the efforts of St. Matthew's University to obtain accreditation from state and national medical boards and authorities.

-3-

Plaintiff David L. Fredrick further requests that this Court grant him such further relief that it deems just and equitable, including costs and attorney's fees.

DAVID L. FREDRICK,
By His Attorneys,

/s/ Barry A. Bachrach

Barry A. Bachrach (BBO #025490)
Michael P. Angelini (BBO #019340)
Vincent F. O'Rourke, Jr. (BBO# 380335)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156
Tel. No.: 508-791-3511
bbachrach@bowditch.com
mangelin@bowditch.com
vorourke@bowditch.com

March 9, 2006

-4-

EXHIBIT A
TO COMPLAINT

LAW OFFICES
K R O N E N B E R G E R  &  A S S O C I A T E S
220 MONTGOMERY STREET, SUITE 1920
SAN FRANCISCO, CALIFORNIA 94104

P: 415.955.1155
F: 415.955.1158
WWW.KRONENBERGERLAW.COM

December 5, 2005

Michael P. Angelini, Esquire
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156

VIA FACSIMILE 508-798-3537, Confirmed by First Class Mail

**RE:**   **St. Matthew's University v. Saba University, Dr. Fredrick, Dr. Hough,** *et. al.*;
       **Calculation of Damages**

Dear Mr. Angelini:

In our last phone conversation on December 1, I stated that I would provide more
details to you on the issue of damages. Generally on the issue of damages, our client has
compelling reasons to pursue this case through the lifting of the seal, full discovery and
judgment against your clients and the other named defendants. The false and misleading
information that your clients have disseminated has inflicted great harm and will
residually cause damages some years into the future.

As a leading example, the National Association of Advisors for the Health
Professions (NAAHP) is an organization of over 900 health professions advisors at
colleges and universities throughout the United States; the adviser members of the
NAAHP are the individuals providing advice to students throughout the United States
deciding on medical schools to which to apply. The NAAHP has endorsed and approved
AAIMG, and the aaimg.com website, multiple times to its members in writing and at
conferences, during which time the aaimg.com website was being operated under false
pretenses and disseminating false and damaging information about our client.

As a second example, several hospital clinical sites have terminated our client's
clinical programs, specifically citing the aaimg.com website, resulting in a loss of crucial
rotation placement opportunities, and damaging St. Matthew's reputation in the academic
and clinical communities.

As a third example, our investigations indicate that your clients acted to interfere
with St. Matthew's accreditation process before the Medical Board of California,
resulting in the denial of our client's application to its significant detriment. The impact
of this is far-reaching, as the actions of the Medical Board of California have caused
other states to question the accreditation of our client.

In addition to such targeted fraud, as a final example, we know that your clients, under the guise of AAIMG, have for years conducted email and postal-mailing campaigns directed towards prospective medical students and their families, loan providers, hospitals, clinical affiliates, and advanced education advisors, disseminating misleading and fraudulent information purposefully designed to injure our client in those parties' eyes.

We are quite certain that full discovery as to these matters will only serve to reveal further fraud and misconduct on the part of your clients to an even greater extent than that already established.

The purpose for citing these examples is to explain the great incentive St. Matthew's has in publicly exposing the fraudulent nature of AAIMG and identifying the specific individuals who have actively promoted AAIMG's fraud over the years. Conversely, any calculation of damages to be paid to St. Matthew's pursuant to a confidential settlement under the present seal must take into account the benefit our client would necessarily forgo of a public vindication of the injuries inflicted upon its reputation.

In our phone conversation you commented that any settlement must take into consideration the ability of the defendants to pay. While I agree that this is an important consideration, I do not have any information or other reference points regarding your clients from which to draw any conclusions about their ability to pay. The damages to our client are significant and to an extent quantifiable at this point, as reflected in my initial demand letter and further detailed below. On the issue of the ability to pay, however, I cannot do anything but defer to you to address this issue as it relates to my client's present expectations.

### Timing of Damages

You specifically requested more information on the issue of the timing of damages incurred by my client. On this issue there are generally three categories of damages, based on liability under the Lanham Act and the other causes of action, that align with certain time periods.

First, there are damages that resulted from AAIMG's misleading statements about Saba/MUA and the industry, without revealing the true source of such statements, which wrongfully bolstered the standing of your client's medical schools at a relative cost to that of St. Matthew's. The damages in this category may have begun to incur as early as 1997, at the time of the founding of our client as a medical school.

It is clear that damages began to accrue at least as of the 1999 launch of the aaimg.com website. The website initially gave our client only "provisional approval," claiming that our client was deficient in over 25% of the purported criteria. Shortly thereafter, your clients moved our client into the deficient category on the aaimg.com

2

website, citing "significant deficiencies," and your clients maintained this negative categorization until the recent efforts of our office to bring the website down.

The launch of the website was preceded, however, by prior tortious conduct on the part of your clients giving rise to damages, in the form of postal mail campaigns directed at hospital clinical sites, loan providers and other key industry organizations. These letters, like the aaimg.com website, falsely lauded Saba University/MUA and wrongfully disparaged its competitors, without revealing the true source of such statements, with the aim of improving Saba Univeristy/MUA's reputation in the community at the cost and to the detriment of competing institutions. An example of such a letter, predating the launch of the aaimg.com website, is attached to the amended complaint as Exhibit I.

The forgoing types of damages, greatly magnified by further fraudulent acts, continue to accrue to the present day, and by their nature will continue into the future, with potentially increasing effect, regarding all aspects of St. Matthew's business to include various accreditation proceedings.

### Types of Damages

Regarding the types of damages, our amended complaint lists the following:

- damage to worldwide reputation;
- loss of applicants and student enrollment – past, present and future;
- interference with accreditation proceedings, past, pending and future;
- damage to relationships with affiliate teaching hospitals; .
- damage to relationships and contracts with student loan providers;
- damage to accreditation and license standing; and
- denials of clinical and residency placements for St. Matthew's hard-working medical students and graduates.

The effects of the defendant's misconduct upon the NAAHP cannot be understated in this matter. The NAAHP has given is imprimatur to AAIMG and the supposed substantial value of AAIMG to the population of pre-med advisers in the United States. This imprimatur has been in writing in its journal, in references to AAIMG in at least two NAAHP conferences, and in handouts at those conferences. As an organization that provides guidance to the hundreds or pre-med advisers throughout the United States, NAAHP's actions to embrace the misleading and fraudulent "findings" of AAIMG have caused a great amount of harm. And the effects of this harm will extend years into the future.

3

### Quantifiable Damages; Punitive Damages

As one component of the measure of damages, we have calculated the loss incurred as a result of each student who did not enroll in St. Matthew's as a result of the defendants' actions. After factoring in yearly attrition rates and a conservative growth rate over the next five years, we calculate that the defendants' actions will result in the total loss of over 1000 students in the time period from 1999 to 2010, assuming the seal is never lifted. This figure of 1000 students reflects a range of between 35 and 180 students per year not enrolling in St. Matthew's during this time period as a proximate result of the defendants' targeted efforts to mislead the public and to defame our client in its academic reputation. This loss in student enrollment alone translates to lost revenue of over $91 million, and lost profit of over $32 million.

A second component of the estimated damages is the injury to St. Matthew's reputation and goodwill resulting from the defendants' misleading statements about and defamation of St. Matthew's directed at hospitals, educational advisors, clinical programs, and in the academic community, separate and apart from loss of student enrollment.

A third and significant component are those damages attributable to the defendants' role in St. Matthew's accreditation proceedings before the Medical Board of California, and the resultant effect on other accreditation proceedings. These state accreditations are hugely valuable assets to St. Matthew's as an institution, and it is entitled to compensation for the wrongful denial of those assets resulting from the defendants' misconduct.

A fourth component of damages St. Matthew's may seek at trial is the disgorgement of profits and benefits wrongfully acquired by the defendants as a result of their unlawful and tortious actions, including any improper or undue influence exerted in the course of any of Saba University's accreditation proceedings. This measure of damages is separate and apart from any measure of actual damages incurred by St. Matthew's, and promises to prove to be a very significant sum.

Over and above any of the above listed types of damages are the punitive damages, quite possibly as a multiple of actual damages, most certainly supported by the intentional and fraudulent misconduct alleged in the present action.

Our offer of $50 million is far below what we could obtain in the form of a judgment. That said, I do recognize ability to pay as a legitimate concern, even though I do not have knowledge of relevant information that would allow me to factor that into our damages calculations. I defer to you on this issue of the ability to pay, and I do hope that this letter will facilitate a productive discussion on settlement of this matter.

As always, I may be reached at (415) 955-1155, ext. 114, or at karl@kronenbergerlaw.com.

Thank you,

KRONENBERGER & ASSOCIATES

Karl S. Kronenberger

**EXHIBIT B**
Amended Complaint for Declaratory Judgment

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CIVIL ACTION NO.: 06-CV-00052-DBH

|  |  |
|---|---|
| DAVID L. FREDRICK, <br> Plaintiff, <br><br> vs. <br><br> ST. MATTHEW'S UNIVERSITY <br> (CAYMAN LTD.), <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

### PARTIES

1.      Plaintiff David L. Fredrick ("Fredrick") is a citizen of the State of Florida and the President of SABA University School of Medicine, a Netherland-Antillies Company ("SABA"). SABA offers a medical education to students from the United States and many European and other foreign countries.

2.      Defendant St. Matthew's University (Cayman) Ltd. ("SMU") is a Cayman Islands, British West Indies foreign company which also offers a medical education to students from the United States and other foreign countries.

### JURISDICTION AND VENUE

3.      This Court has diversity jurisdiction pursuant to 28 U.S.C. 1332(a) because it is a suit between a citizen of Florida and a subject of a foreign country and the amount in controversy exceeds $75,000.

4.     A significant part of SMU's curriculum is offered in Maine in conjunction with St. Joseph's College ("St. Joseph's") in Standish, Maine, pursuant to an agreement between SMU and St. Joseph's.

5.     SMU students attend courses at facilities operated by SMU in Windham, Maine as part of the curriculum for matriculation at SMU.

6.     This court therefore has personal jurisdiction over SMU as a result of its regularly conducting business in the State of Maine and this action is properly venued in this Court pursuant to 28 U.S.C. 1391(a).

## FACTS

7.     Fredrick repeats and realleges paragraphs 1 through 6 of the Amended Complaint as if fully set forth herein.

8.     Through its counsel SMU has claimed that Fredrick is responsible for statements published by the Association of American International Medical Graduates (AAIMG) and which allegedly disparage SMU. SMU's counsel has claimed that Fredrick has tortiously interfered with SMU's efforts to obtain accreditation by various entities and with its contractual and prospective contractual relationships with its students and that Fredrick is liable to it for tens of millions of dollars of lost revenue and other damages to SMU. Attachment A is one such communication from SMU's counsel describing claims of SMU regarding Fredrick and others. These claims are included in an action entitled St. Matthews University (CAYMAN) LTD. v. SABA University, et al, No. CV-S-05-0848-RCJ (LRL), now pending in the United States District Court of Nevada. Fredrick has moved to dismiss that the claim against him on the grounds that the District Court does not have personal jurisdiction over Fredrick and that Nevada

-2-

is not a proper venue for the dispute. Fredrick has instituted this action in this Court because jurisdiction and venue are appropriate in Maine.

9.      Fredrick denies all the claims of SMU's counsel including the claims that he has disparaged SMU and that he has tortiously interfered with SMU's efforts to obtain accreditation and its contractual and prospective contractual relationships.

10.     SMU's claims concerning Fredrick's alleged libelous activities are designed to disparage Fredrick and Fredrick risks substantial damage to his reputation and professional standing as a result of those claims.

### COUNT I
### (Declaratory Relief)

11.     Fredrick repeats and realleges paragraphs 1 through 10 of the Amended Complaint as if fully set forth herein.

13.     Fredrick seeks a declaratory judgment under 28 U.S.C. §§ 2201-2202.

14.     There exists an actual controversy between the parties resulting from the allegations improperly made by SMU.

15.     Fredrick has legal standing to pursue this declaratory judgment regarding his defenses to SMU's claims.

16.     After a trial in this matter, Fredrick will establish entitlement to the declaratory relief set forth below.

WHEREFORE, Plaintiff David L. Fredrick requests that this Court enter an order declaring that:

1)      Fredrick has not defamed St. Matthew's University;

2)      Fredrick has not engaged in unfair competition with St. Matthew's University by any false or misleading statements;

-3-

{Client Files\LIT\305173\0001\MAINE\00642487.DOC:3}

3)     Fredrick has not interfered with St. Matthew's University contractual

relationships or with its prospective contractual relationships with students; and

4)     Fredrick has not interfered with the efforts of St. Matthew's University to obtain

accreditation from state and national medical boards and authorities.

Plaintiff David L. Fredrick further requests that this Court grant him such further relief

that it deems just and equitable, including costs and attorney's fees.


                                          DAVID L. FREDRICK,
                                          By His Attorneys,

                                          /s/ Barry A. Bachrach

                                          Barry A. Bachrach (002641)
                                          Bowditch & Dewey, LLP
                                          311 Main Street
                                          P.O. Box 15156
                                          Worcester, MA 01615-0156
                                          Tel. No.: 508-791-3511
                                          bbachrach@bowditch.com

*Of counsel:*
Michael P. Angelini
Vincent F. O'Rourke, Jr.
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156
Tel. No.: 508-791-3511
mangelini@bowditch.com
vorourke@bowditch.com


March 10, 2006

-4-

LAW OFFICES
KRONENBERGER & ASSOCIATES
220 MONTGOMERY STREET, SUITE 1920
SAN FRANCISCO, CALIFORNIA 94104

P: 415.955.1155
F: 415.955.1158
WWW.KRONENBERGERLAW.COM

December 5, 2005

Michael P. Angelini, Esquire
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156

VIA FACSIMILE 508-798-3537, Confirmed by First Class Mail

RE:   **St. Matthew's University v. Saba University, Dr. Fredrick, Dr. Hough, *et. al.*;
       Calculation of Damages**

Dear Mr. Angelini:

In our last phone conversation on December 1, I stated that I would provide more
details to you on the issue of damages. Generally on the issue of damages, our client has
compelling reasons to pursue this case through the lifting of the seal, full discovery and
judgment against your clients and the other named defendants. The false and misleading
information that your clients have disseminated has inflicted great harm and will
residually cause damages some years into the future.

As a leading example, the National Association of Advisors for the Health
Professions (NAAHP) is an organization of over 900 health professions advisors at
colleges and universities throughout the United States; the adviser members of the
NAAHP are the individuals providing advice to students throughout the United States
deciding on medical schools to which to apply. The NAAHP has endorsed and approved
AAIMG, and the aaimg.com website, multiple times to its members in writing and at
conferences, during which time the aaimg.com website was being operated under false
pretenses and disseminating false and damaging information about our client.

As a second example, several hospital clinical sites have terminated our client's
clinical programs, specifically citing the aaimg.com website, resulting in a loss of crucial
rotation placement opportunities, and damaging St. Matthew's reputation in the academic
and clinical communities.

As a third example, our investigations indicate that your clients acted to interfere
with St. Matthew's accreditation process before the Medical Board of California,
resulting in the denial of our client's application to its significant detriment. The impact
of this is far-reaching, as the actions of the Medical Board of California have caused
other states to question the accreditation of our client.

In addition to such targeted fraud, as a final example, we know that your clients, under the guise of AAIMG, have for years conducted email and postal-mailing campaigns directed towards prospective medical students and their families, loan providers, hospitals, clinical affiliates, and advanced education advisors, disseminating misleading and fraudulent information purposefully designed to injure our client in those parties' eyes.

We are quite certain that full discovery as to these matters will only serve to reveal further fraud and misconduct on the part of your clients to an even greater extent than that already established.

The purpose for citing these examples is to explain the great incentive St. Matthew's has in publicly exposing the fraudulent nature of AAIMG and identifying the specific individuals who have actively promoted AAIMG's fraud over the years. Conversely, any calculation of damages to be paid to St. Matthew's pursuant to a confidential settlement under the present seal must take into account the benefit our client would necessarily forgo of a public vindication of the injuries inflicted upon its reputation.

In our phone conversation you commented that any settlement must take into consideration the ability of the defendants to pay. While I agree that this is an important consideration, I do not have any information or other reference points regarding your clients from which to draw any conclusions about their ability to pay. The damages to our client are significant and to an extent quantifiable at this point, as reflected in my initial demand letter and further detailed below. On the issue of the ability to pay, however, I cannot do anything but defer to you to address this issue as it relates to my client's present expectations.

### Timing of Damages

You specifically requested more information on the issue of the timing of damages incurred by my client. On this issue there are generally three categories of damages, based on liability under the Lanham Act and the other causes of action, that align with certain time periods.

First, there are damages that resulted from AAIMG's misleading statements about Saba/MUA and the industry, without revealing the true source of such statements, which wrongfully bolstered the standing of your client's medical schools at a relative cost to that of St. Matthew's. The damages in this category may have begun to incur as early as 1997, at the time of the founding of our client as a medical school.

It is clear that damages began to accrue at least as of the 1999 launch of the aaimg.com website. The website initially gave our client only "provisional approval," claiming that our client was deficient in over 25% of the purported criteria. Shortly thereafter, your clients moved our client into the deficient category on the aaimg.com

website, citing "significant deficiencies," and your clients maintained this negative categorization until the recent efforts of our office to bring the website down.

The launch of the website was preceded, however, by prior tortious conduct on the part of your clients giving rise to damages, in the form of postal mail campaigns directed at hospital clinical sites, loan providers and other key industry organizations. These letters, like the aaimg.com website, falsely lauded Saba University/MUA and wrongfully disparaged its competitors, without revealing the true source of such statements, with the aim of improving Saba Univeristy/MUA's reputation in the community at the cost and to the detriment of competing institutions. An example of such a letter, predating the launch of the aaimg.com website, is attached to the amended complaint as Exhibit I.

The forgoing types of damages, greatly magnified by further fraudulent acts, continue to accrue to the present day, and by their nature will continue into the future, with potentially increasing effect, regarding all aspects of St. Matthew's business to include various accreditation proceedings.

### Types of Damages

Regarding the types of damages, our amended complaint lists the following:

- damage to worldwide reputation;
- loss of applicants and student enrollment – past, present and future;
- interference with accreditation proceedings, past, pending and future;
- damage to relationships with affiliate teaching hospitals;
- damage to relationships and contracts with student loan providers;
- damage to accreditation and license standing; and
- denials of clinical and residency placements for St. Matthew's hard-working medical students and graduates.

The effects of the defendant's misconduct upon the NAAHP cannot be understated in this matter. The NAAHP has given is imprimatur to AAIMG and the supposed substantial value of AAIMG to the population of pre-med advisers in the United States. This imprimatur has been in writing in its journal, in references to AAIMG in at least two NAAHP conferences, and in handouts at those conferences. As an organization that provides guidance to the hundreds or pre-med advisers throughout the United States, NAAHP's actions to embrace the misleading and fraudulent "findings" of AAIMG have caused a great amount of harm. And the effects of this harm will extend years into the future.

3

## Quantifiable Damages; Punitive Damages

As one component of the measure of damages, we have calculated the loss incurred as a result of each student who did not enroll in St. Matthew's as a result of the defendants' actions. After factoring in yearly attrition rates and a conservative growth rate over the next five years, we calculate that the defendants' actions will result in the total loss of over 1000 students in the time period from 1999 to 2010, assuming the seal is never lifted. This figure of 1000 students reflects a range of between 35 and 180 students per year not enrolling in St. Matthew's during this time period as a proximate result of the defendants' targeted efforts to mislead the public and to defame our client in its academic reputation. This loss in student enrollment alone translates to lost revenue of over $91 million, and lost profit of over $32 million.

A second component of the estimated damages is the injury to St. Matthew's reputation and goodwill resulting from the defendants' misleading statements about and defamation of St. Matthew's directed at hospitals, educational advisors, clinical programs, and in the academic community, separate and apart from loss of student enrollment.

A third and significant component are those damages attributable to the defendants' role in St. Matthew's accreditation proceedings before the Medical Board of California, and the resultant effect on other accreditation proceedings. These state accreditations are hugely valuable assets to St. Matthew's as an institution, and it is entitled to compensation for the wrongful denial of those assets resulting from the defendants' misconduct.

A fourth component of damages St. Matthew's may seek at trial is the disgorgement of profits and benefits wrongfully acquired by the defendants as a result of their unlawful and tortious actions, including any improper or undue influence exerted in the course of any of Saba University's accreditation proceedings. This measure of damages is separate and apart from any measure of actual damages incurred by St. Matthew's, and promises to prove to be a very significant sum.

Over and above any of the above listed types of damages are the punitive damages, quite possibly as a multiple of actual damages, most certainly supported by the intentional and fraudulent misconduct alleged in the present action.

Our offer of $50 million is far below what we could obtain in the form of a judgment. That said, I do recognize ability to pay as a legitimate concern, even though I do not have knowledge of relevant information that would allow me to factor that into our damages calculations. I defer to you on this issue of the ability to pay, and I do hope that this letter will facilitate a productive discussion on settlement of this matter.

4

As always, I may be reached at (415) 955-1155, ext. 114, or at karl@kronenbergerlaw.com.

Thank you,

KRONENBERGER & ASSOCIATES

Karl S. Kronenberger

Karl S. Kronenberger